UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIGUEL RIVERA, N-23881,           )
                                  )
                  Plaintiff,      )
                                  )
        vs.                       )   05 C 6272
                                  )
ROGER E. WALKER, JR., et al.,     )
                                  )
                  Defendants.     )

# MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendants', Roger E. Walker, Jr. ("Walker"), Diedre Battaglia ("Battaglia"), Cheri Tarr ("Tarr"), L. Garcia ("Garcia"), Charles Gobble ("Gobble"), James Dominguez ("Dominguez"), Latanya Hunter ("Hunter"), Rennatta Glenn ("Glenn"), and Sandra Hawkins ("Hawkins") (collectively referred to as "Defendants"), Fed. R. Civ. Proc. 12(b)(6) Motion to Dismiss. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

# BACKGROUND

Plaintiff, Miguel Rivera ("Rivera"), is currently a prisoner at Pontiac Correctional Center ("Pontiac") and filed a *pro se* lawsuit against several employees

of the Illinois Department of Corrections pursuant to 42 U.S.C. § 1983. We assume the truth of the following facts for the purposes of this Motion only.

Prior to his present incarceration, Rivera was an inmate at Statesville Correctional Center ("Statesville"). On June 28, 2005, Jeff Musgrove ("Musgrove"), another inmate at Statesville, informed Rivera that he was being transferred to Pontiac, where he had previously been incarcerated, and that inmates there were going to hurt him on Musgrove's behalf. Rivera became upset because he feared for his safety and had repeatedly told prison officials gang members at Pontiac wanted to hurt him.

Shortly thereafter, Sergeant Garcia came to Rivera's cell. Rivera notified Garcia of his concerns and that he did not want to be transferred back to Pontiac. Rivera requested to speak to Assistant Warden Dominguez and Internal Affairs Officer Tarr, both of whom Rivera alleges previously informed him, on or about April 11, 2005, that he would not be sent back to Pontiac because gang members there had threatened his safety. Garcia did not call Dominguez and Tarr.

Rivera then cut his wrists "deep and hard." Garcia did not get medical assistance for Rivera despite Rivera's bleeding. Rather, Garcia stated, "Now you know better [next] time who to [file] you[r] grievance on." Consequently, sometime prior to 10:45 a.m., while still bleeding, Rivera called his attorney, Harold Winston

("Winston"), in the Cook County Public Defender's Office. During that conversation, Winston asked to speak with Garcia, but Garcia refused.

At approximately 10:45 a.m., Winston called and spoke to Dominguez's Executive Secretary, Dawn Wilt ("Wilt"), and told her that Rivera was bleeding and had been refused medical care. In addition, Winston informed Wilt that Andrea Monsees, another of Rivera's attorneys, had previously written Warden Battaglia about Rivera's enemies at other prisons. After Rivera spoke with Winston, Garcia took Rivera to the medical care unit to receive treatment for the cuts on his wrists.

While at the medical care unit, Rivera contends that Hunter witnessed Garcia come to the unit to harass Rivera, yet did nothing about it. On July 5, 2005, Rivera filed grievances against Garcia and Hunter and to contest his transfer to Pontiac with Hawkins, the grievance officer at Statesville. Rivera asserts those grievances were wrongfully dismissed.

On October 31, 2005, Rivera filed the instant action alleging violation of 42 U.S.C. § 1983. Defendants subsequently filed the present Motion to Dismiss on January 30, 2006, and the court set a briefing schedule requiring Rivera to respond to the Motion by March 2, 2006. On March 9, 2006, Rivera requested leave of court to file an Amended Complaint and requested an extension of time in addition to submitting an *In Forma Pauperis* Application and Motion for Appointment of Counsel.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (citing Beanstalk Group, Inc. v. AM Gen. Corp., 283 F.3d 856, 863 (7th Cir. 2002)). "A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quotations omitted) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)). With these principles in mind, we now address the Motion before us.

## DISCUSSION

As an initial matter, it is important to note at the outset that Rivera failed to meet the deadline for replying to said Motion, and in lieu thereof, has filed a Motion to File an Amended Complaint and Motion for Extension of Time. After reviewing Rivera's documents, it is evident that they make no substantial changes to his claims and that they only add Hunter and Hawkins as defendants. Because Rivera has only asserted

limited involvement on the part of Hunter and Hawkins, and, given Rivera is appearing *pro se*, the Motion for Leave for Extension of Time to File an Amended Complaint is granted.

Turning to Defendants' present Motion to Dismiss, after reviewing Rivera's Amended Complaint, it is evident that he essentially claims violation of section 1983 based on two alleged wrongdoings: 1) his alleged refusal of medical attention and 2) his prison transfer to Pontiac. Further, Rivera has brought suit against the Defendants in their individual capacities, with the exceptions of Walker and Dominguez against whom he also asserts liability in their official capacities.

**A. Rivera's Official Capacity Claims Against Walker and Dominguez**

Rivera has brought suit pursuant to 42 U.S.C. § 1983 against Walker and Domiguez in their official and individual capacities. A suit against an official in her official capacity is a suit against the government entity that she represents. Sanville v. McCaughtry, 266 F.3d 724, 732 (7th Cir. 2001). By suing the Department of Corrections officials, Rivera is actually suing the state, and "section 1983 does not authorize suits against the states." Id. at 732-33 (dismissing section 1983 claims against Wisconsin state prison officials in their official capacity). Consequently, Rivera's section 1983 claims against Dominguez and Walker in their official capacities are dismissed.

**B. Rivera's Remaining Individual Capacities Claims**

Rivera also asserts section 1983 claims against the Defendants in their individual capacities for his lack of medical treatment and subsequent transfer to Pontiac. To recover damages under section 1983, Rivera must establish that the Defendants were "personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

First, Rivera alleges that his Eighth Amendment right to be free of cruel and unusual punishment was violated by Garcia's failure to adequately satisfy Rivera's immediate need for medical attention. In Sellers v. Henman, the Seventh Circuit held that "[n]eglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoners health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'" 41 F.3d 1100, 1102 (7th Cir.1994) (quoting Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1979 (1994)).

Therefore, it is evident from Rivera's amended complaint that he alleges Garcia was aware of his immediate need for medical attention, but nevertheless acted with deliberate indifference to Rivera's safety by withholding such treatment for three hours. Accordingly, the section 1983 claims against Garcia in his individual capacity cannot be dismissed. However, Rivera has only posited mere conclusions of section 1983

**B. Rivera's Remaining Individual Capacities Claims**

Rivera also asserts section 1983 claims against the Defendants in their individual capacities for his lack of medical treatment and subsequent transfer to Pontiac. To recover damages under section 1983, Rivera must establish that the Defendants were "personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

First, Rivera alleges that his Eighth Amendment right to be free of cruel and unusual punishment was violated by Garcia's failure to adequately satisfy Rivera's immediate need for medical attention. In Sellers v. Henman, the Seventh Circuit held that "[n]eglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoners health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'" 41 F.3d 1100, 1102 (7th Cir.1994) (quoting Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1979 (1994)).

Therefore, it is evident from Rivera's amended complaint that he alleges Garcia was aware of his immediate need for medical attention, but nevertheless acted with deliberate indifference to Rivera's safety by withholding such treatment for three hours. Accordingly, the section 1983 claims against Garcia in his individual capacity cannot be dismissed. However, Rivera has only posited mere conclusions of section 1983

violations, which cannot even be classified as "bare minimum facts," in regards to the remaining Defendants' responsibility for withholding of said treatment. Therefore, Rivera's section 1983 claim for withholding medical treatment as to the remaining Defendants is dismissed.

Next, Rivera alleges that defendants Battaglia, Dominguez, Tarr and Hawkins violated his Eighth Amendment rights by transferring him back to Pontiac where they knew he had gang-related enemies. The Seventh Circuit recognized almost a decade ago "the dangers that prison gangs pose to inmates, and . . . the logistical nightmare they create for prison administrators." Babcock v. White, 102 F.3d 267, 268 (7th Cir. 1996). That being said, although prison officials owe "a duty under the Eighth Amendment to take reasonable measures to guarantee the safety of the inmates," a prisoner does not have his or her choice of prison to serve out their sentence. Jelinek v. Greer, 90 F.3d 242, 244 (7th Cir. 1996).

In Jelinek, the Seventh Circuit affirmed summary judgment in favor of prison officials who removed a prisoner from protective custody, because he was causing trouble, to a less secure unit. Id. at 244-45. The prisoner was subsequently attacked and injured in the prison yard by another prisoner. Id. at 243. The Court found that the plaintiff had failed to show that the officials had acted with "deliberate indifference" in placing him in the less secure unit. Id. at 244-45. In light of the

presented facts, the Court stated, "If the prison officials had immediately transferred [the prisoner] to the general population, it is possible that he might have had a claim." Id. at 244.

In the instant case, Rivera has simply been transferred from Statesville to Pontiac. Although Rivera contends that Defendants knew of the possibility that the transfer posed a danger to his safety, Rivera fails to allege that an actual injury has occurred since his transfer to Pontiac or that such an injury is imminent. Moreover, there is no indication that Rivera would necessarily be safer at Statesville than Pontiac because the complaint states that one of Rivera's enemies, Jeff Musgrove, threatened Rivera while Rivera was at Statesville. Consequently, and in light of Rivera's status as *pro se*, Rivera has failed to state a claim upon which relief can be granted in relation to his transfer to Pontiac and, therefore, that claim against defendants, Battaglia, Dominguez, and Tarr is dismissed.

**C. Rivera's Motion for Appointment of Counsel**

Finally, Rivera has filed a Motion for Appointment of Counsel. In addressing said Motion, we first note that a civil litigant, even though indigent, has no right to appointed counsel. See Forbes v. Edgar, 112 F.3d 262, 264 (7th Cir. 1997). A court, however, in its broad discretion can request that an attorney handle the case pursuant to 28 U.S.C. § 1915(d). Id. The Seventh Circuit has set forth a non-exclusive list of five factors to be considered in determining whether or not to appoint counsel. They

are: "(1) the merits of the indigent's claim for relief; (2) the ability of the indigent plaintiff to investigate crucial facts unaided by counsel; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent to present the case; and (5) the complexity of the legal issues raised by the complaint." Jackson v. County of McLean, 953 F.2d 1070, 1072 (7th Cir. 1992) (citing Maclin v. Freake, 650 F.2d 885, 887 (7th Cir. 1981)). In light of our decisions regarding Defendants' Motion to Dismiss, the only claim remaining is against Garcia in his individual capacity. Consequently, Rivera's claim is not complex and, given his ability to present his current Motions, he has failed to present any justifiable hardship that would inhibit his abilities to litigate that matter. As a result, his Motion for Appointment of Counsel is denied.

## CONCLUSION

Based on the foregoing analysis, the Motion to Dismiss is granted in part and denied in part. Defendants' Motion is denied as to Garcia's alleged refusal of medical treatment and the Motion is granted as to all other claims. In addition, Rivera's Motion for Appointment of Counsel is denied.

*Charles P. Kocoras*

---
Charles P. Kocoras
Chief Judge
United States District Court

Dated:     March 30, 2006